IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION[1]

| | |
|---|---|
| JEFFERY TODD HENSON, SR.,<br>   Plaintiff,<br><br>v.<br><br>LYNN A. ESPEJO,<br>   Defendant. | Case No. 3:25-cv-03192-JEH-RLH |

**Order**

Now before the Court are Defendant Lynn A. Espejo's Rule 12(b)(6) Motion to Dismiss and Motion for Summary Judgment (D. 4), Plaintiff Jeffery Todd Henson, Sr.'s Response in Opposition (D. 8), and the "Plaintiff's Sur-Reply and Motion to Strike Defendant's July 29, 2025 Filing [9]" (D. 10).[2] The matter is fully briefed and for the reasons set forth *infra*, the Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART and the Plaintiff's Sur-Reply is DENIED AS MOOT.

**I**

On July 7, 2025, Plaintiff Jeffery Todd Henson, Sr. filed his Complaint for Defamation, Tortious Interference, Intentional Infliction of Emotional Distress, and Abuse of Process (D. 1) against Defendant Espejo, asserting diversity jurisdiction as the basis of the Court's subject matter jurisdiction. Plaintiff Henson is the Founder and President of The Legal Advocation Center, Inc., which provides advocacy services for incarcerated individuals and their families. He also works

---

[1] On July 8, 2025, this case was transferred from the Springfield Division of this Court to the Peoria Division. *See* 7/8/2025 Text Order (Myerscough, J.).
[2] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

for the Panichi Law Office in Springfield, Illinois. Plaintiff Henson pled guilty on October 4, 2021 as to Counts 1 (Wire Fraud), 4 (Money Laundering), and 5 (Aggravated Identity Theft) of an Indictment filed in the Urbana Division of this Court in August 2020. *United States v. Henson*, No. 2:20-cr-20049-JEH-EIL-1 (C.D. Ill.) (*Henson* criminal case) (D. 27 & 32); *see also Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss."). He was subsequently sentenced in February 2022 to a total term of 87 months and was released from custody on June 5, 2024. *Henson*, No. 2:20-cr-20049-JEH-EIL-1 at (D. 40 at ECF p. 2 & D. 176 at ECF p. 2). Defendant Espejo is also a formal federal inmate. Pl.'s Compl. Ex. B (D. 1 at ECF p. 43).

The Plaintiff alleges[3] he operates a reputable consulting business assisting federal inmates and their families with advocacy services. He says Defendant Espejo, a direct competitor, engaged in a campaign to damage the Plaintiff's reputation by making false statements in public forums and through improper court filings. Specifically, the Defendant filed a brief in the Plaintiff's criminal case, claiming the Plaintiff was likely to "commit another crime" and harm others "financially and emotionally with false promises and hope." Pl.'s Compl. (D. 1 at ECF p. 4) (quoting Espejo's Amicus Curiae Brief filed January 21, 2025 in the *Henson* criminal case).[4] The Defendant accused the Plaintiff of being a "possible scammer," challenged his lawful employment, and distorted his professional

---

[3] When ruling on a motion to dismiss, the court must take all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Indep. Truck Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012).
[4] Exhibit B attached to the Plaintiff's Complaint is a copy of Defendant Espejo's Amicus Curiae Brief. (D. 1 at ECF pp. 37-44).

achievements in both her social media posts[5] and Amicus Curiae Brief. *Id*. The Defendant warned others about the Plaintiff's business and stated in her Amicus Curiae Brief that Plaintiff's mother received payments on the Plaintiff's behalf. As a direct result of the Defendant's statements in her Brief and social media posts, the FBI initiated an investigation into the Plaintiff's business, which included making contact with the Plaintiff's employer and clients. The Defendant's conduct led to the closure of the Plaintiff's business account with Cash App, and the Plaintiff was "forced" to file a lawsuit against the FBI arising from its investigation triggered by the Defendant's conduct. *Id*.

The Plaintiff seeks $250,000 in compensatory damages, $500,000 in punitive damages, and a permanent injunction against the Defendant.

**II**

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of claims for "failure to state a claim upon which relief can be granted". A court may grant a Rule 12(b)(6) motion to dismiss only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint sufficient on its face need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action". *Id*. at 555. The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). Moreover, "[a] document filed *pro se* is to be liberally construed," and a "*pro se* complaint, however inartfully pleaded, must be held to

---

[5] Exhibit A attached to the Plaintiff's Complaint is a copy of social media posts Plaintiff and Defendant Espejo exchanged on varying dates including July 31, 2024, August 6, 2024, August 17, 2024, and September 1, 2024. (D. 1 at ECF pp. 11-36).

3

less stringent standards than formal pleadings drafted by lawyers . . . ". *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

As an initial matter, the Court will not construe the Defendant's Motion as one for summary judgment, though it is partially entitled as such. Federal Rule of Civil Procedure 12 provides in relevant part, "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Federal] Rule [of Civil Procedure] 56." FED. R. CIV. P. 12(d). Defendant Espejo attached as exhibits to her Motion to Dismiss emails/letters which are from, as she puts it, "a hand full [sic] of people *the defendant* has helped[]". Def.'s Mot. (D. 4 at ECF p. 4) (emphasis added); Def.'s Mot. Exs. 1-9 (D. 4 at ECF pp. 17-25); *and* Def.'s Mot. Ex. (D. 9 at ECF p. 2). Such emails/letters are matters outside the pleadings which are neither referred to in the Plaintiff's Complaint nor are central to his claims. *Compare Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim.") (quotation marks omitted). Letters vouching for the Defendant's abilities in advocating for incarcerated individuals have nothing to do with the Plaintiff's allegations, among others, that the Defendant falsely stated the Plaintiff operated as a "possible scammer", intentionally disseminated false accusations regarding the Plaintiff, falsely portrayed the Plaintiff as a criminal and a scammer, and sought to malign his character.

The Court thus excludes from its consideration the Defendant's attached emails/letters, and the Plaintiff's "Sur-Reply and Motion to Strike Defendant's July 29, 2025 Filing [9]" (D. 10) asking the Court to strike and disregard the Defendant's additional third-party email vouching for Defendant Espejo is moot.

**A**

To state a claim for defamation under Illinois law, a plaintiff must: 1) present facts showing that the defendant made a false statement about the plaintiff; 2) the defendant made an unprivileged publication of that statement to a third party; and 3) that this publication caused damages. *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022) (quoting *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006)); *see LoBianco v. Bonefish Grill, LLC*, 94 F.4th 675, 677 (7th Cir. 2024) (stating that where the case is proceeding under diversity jurisdiction, "state substantive tort law applies"). Here, the Defendant concedes her statements fall under the fifth category of statements that are defamatory *per se* – that the person lacks ability in his profession or the words otherwise prejudice the person in his profession. *See L. Offs. Of David Freydin, P.C.*, 24 F.4th at 1129 (explaining "There are five categories of statements that are defamatory per se, where harm or damages are presumed without specific proof."). She challenges only the first element, arguing the affirmative defenses of truth and opinion. *Tirio v. Dalton*, 144 N.E.3d 1261, 1276 (Ill. App. Ct. 2019) ("Even if a statement is defamatory *per se*, it is not actionable if it is an expression of opinion, protected under the first amendment."); *Andrews v. At World Props., LLC*, 236 N.E.3d 540, 548 (Ill. App. Ct. 2023) ("truth is an absolute defense to defamation").

First of all, "courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses" as the "mere presence of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films, LLC*, 682 F.3d at 690. Where a plaintiff pleads himself out of court by setting forth all that is necessary to satisfy the affirmative defense, "*i.e.*, if the complaint presents all relevant facts such that the plaintiff has essentially admitted all the ingredients of an impenetrable defense", a court may take a shortcut by not requiring strict

compliance with the Federal Rules of Civil Procedure. *Mayhew v. Candid Color Sys., Inc.*, 743 F. Supp. 3d 994, 1010-11 (S.D. Ill. 2024) (quotation marks omitted). Where that "'narrow and pragmatic' exception applies, 'the difference between Rules 12(b)(6) and 12(c) [for judgment on the pleadings] may be disregarded.'" *Id.* at 1011 (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019)).

In the instant case, Plaintiff Henson has not set forth in his Complaint all that is necessary to establish Defendant Espejo's affirmative defenses of truth and opinion. There are too many nuances in the Plaintiff's Complaint (and the Defendant's explanations in defense) at this stage of the case for the Court to rule in the Defendant's favor on the basis of her affirmative defenses. *See Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022) ("Rarely will the face of the complaint so clearly prove the opponent's affirmative defense that immediate dismissal, prior to the filing of an answer, will be proper."). The Court reminds the Defendant that "an affirmative defense must be raised in the answer, not by motion." *Id.*

Construing the *pro se* Complaint liberally and accepting the Plaintiff's allegations as true at this stage, the Court finds Plaintiff Henson has sufficiently alleged a claim for defamation. *See Rexel USA, Inc. v. ITS Solar, LLC*, No. 21-CV-1456-NJR, 2022 WL 1746767, at *2 (S.D. Ill. May 31, 2022) ("While Illinois law applies, the Seventh Circuit has made clear that when a party files a claim in federal court asserting defamation *per se* under Illinois law, such a claim is governed by the federal notice pleading rule, not the Illinois pleading rule.") (citations omitted). In her Facebook post, the Defendant stated, among other things, "Mr. Henson is well known for making promises of help for inmates and their families that he is unable to accomplish", "even those that took up for him have parted ways with Mr. Henson due to his false promises", and "While I

6

believe everyone deserves a second chance, Mr. Henson has proven that he uses second chances to continue to scam others." Pl.'s Compl. Ex. A (D. 1 at ECF p. 18). In her Amicus Curiae Brief, the Defendant stated, among other things, she was told Henson required an inmate's family member "to pay [Henson] though [sic] a Cash App and/or Venmo account in the name of Linda Smith, who [the family member] claims Mr. Henson told her is [his] mother who collects the fee money required to pay him for his services." Pl.'s Compl. Ex. B (D. 1 at ECF p. 43). The Defendant further stated, "And if Mr. Henson is actually working with a law firm on these cases, why is he collecting money through Cash App and/or Venmo and using a Hotmail email account to conduct such business?" *Id.*

**B**

To state a claim for tortious interference with business expectancy, a plaintiff must allege: 1) a reasonable expectation of entering into a valid business relationship; 2) the defendant's knowledge of the plaintiff's expectancy; 3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and 4) damages to the plaintiff resulting from such interference. *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009) (quoting *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991)). Here, the Defendant argues the Plaintiff makes no claim of suffering injury as the Plaintiff is still employed, and it does not necessarily follow that individuals would have used Henson's services but for Espejo's involvement.

The Defendant's former argument is somewhat inaccurate as the Plaintiff alleges, among other things, "irreparable harm to his ability to maintain and grow his client base." Pl.'s Compl. (D. 1 at ECF p. 6). The latter argument is compelling, but not determinative where there is a greater and fatal flaw in the Plaintiff's allegations as to the first element. "A reasonable expectancy requires 'more than the hope or opportunity of a future business relationship.'" *Brinley Holdings Inc.*

7

*v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022) (quoting *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machs. Corp.*, 520 F. Supp. 2d 1012, 1022 (N.D. Ill. 2007)); *see also Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2021 WL 83550, at *7 (N.D. Ill. Jan. 11, 2021) ("To survive a motion to dismiss, [a party] must allege more than a mere hope that potential customers would do business with it in the future.").

Here, the Plaintiff alleges that he "maintained ongoing relationships with clients and potential clients through his legal advocacy practice[]" without any further details. Pl.'s Compl. (D. 1 at ECF p. 6). Such an allegation is one of hope or an opportunity of a future business relationship and is insufficient to plausibly allege a *reasonable* expectation. *See Martin v. Thor Motor Coach Inc.*, 602 F. Supp. 3d 1087, 1091-92 (N.D. Ind. 2022) ("Whether a claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'") (quoting *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011)). The Plaintiff's allegation as to his reasonable expectation is further lacking where the Plaintiff attached social media posts he and Defendant Espejo exchanged. Therein, Espejo informed him he was removed from the Facebook page she owned because "It's a page for support not your playground to get business." Pl.'s Compl. Ex. A (D. 1 at ECF p. 36). The shortcomings in his allegation as to the first element undermine the plausibility of the Plaintiff's unspecific allegations as to resulting damages.

Accordingly, the Plaintiff fails to state a claim for tortious interference with business expectancy.

### C

To recover damages for intentional infliction of emotional distress (IIED) under Illinois law, a plaintiff must establish: 1) the defendant's conduct was truly extreme and outrageous; 2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would

8

cause severe emotional distress); and 3) the defendant's conduct did in fact cause severe emotional distress. *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). Here, the Defendant argues the Plaintiff meets none of those elements given that he has been to prison for a number of years, several of which during the Covid pandemic and during which he had to "battle for basic medical care"; he "endured the struggle of a federal indictment and the resulting social and familial fallout from that event[]"; "endured the loss of tens of thousands of dollars which he fought valiantly for in court"; and "endured a horrible and traumatic experience losing a very beloved pet". Def.'s Mot. to Dismiss (D. 4 at ECF pp. 11-12). Defendant Espejo therefore argues that to suggest her conduct actually and proximately caused Henson emotional distress via a few Facebook posts and a court filing he managed to get stricken "is just not a credible claim, and Plaintiff puts forth zero evidence demonstrating his severe or extreme distress due to this." *Id*. at ECF p. 12.

The Plaintiff's IIED claim must be dismissed for failure to state a claim. The Illinois Supreme Court has explained that "to qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Gross v. Chapman*, 475 F. Supp. 3d 858, 863-64 (N.D. Ill. 2020) (quoting *Feltmeier*, 798 N.E.2d at 81-82). "Whether conduct is extreme and outrageous is judged on an objective standard, based on all the facts and circumstances of the particular case." *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 511 (N.D. Ill. 2012) (citing *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. Ct. 2000)).

Plaintiff Henson alleges the Defendant in "falsely portraying Plaintiff as a criminal and a scammer, and targeting his family – was extreme and outrageous." Pl.'s Compl. (D. 1 at ECF pp. 6-7). Those allegations are simply an insufficient recitation of an element of his IIED claim. Moreover, to the Defendant's point, the

Plaintiff is, in fact, a formerly imprisoned convicted felon. The social media posts the Plaintiff and Defendant exchanged, which the Plaintiff attached to his Complaint, reveal that the Defendant explained to Henson why he was not welcome on her Facebook page, the parties engaged in a back and forth about what was happening and why as to the Plaintiff on her Facebook group page, and the Defendant informed the Plaintiff that she did not "set out to hurt people but I will certianly [sic] expose anyone out there trying to do so." Pl.'s Compl. Ex. A (D. 1 at ECF p. 24). The Defendant's Facebook post and Amicus Curiae Brief filing in Henson's criminal case, while indicating Henson to be a possible scammer and expressing an interest in stopping Henson from "committing . . . broad spread losses" to federal inmates and their families through Facebook support groups, do not go beyond all possible bounds of decency nor can be regarded as intolerable in a civilized society. It is quite the opposite under the particular facts of this case. To the extent the Defendant's statements were false, the Plaintiff, as already discussed, may proceed on his defamation claim.

### D

To state a claim for abuse of process, a plaintiff must plead: 1) the existence of an ulterior purpose or motive; and 2) some act in the use of legal process not proper in the regular prosecution of the proceedings. *Pace v. Timmermann's Ranch and Saddle Shop Inc.*, 795 F.3d 748, 757 (7th Cir. 2015) (citing *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004)). The elements of abuse of process are strictly construed. *Kumar*, 820 N.E.2d at 1173. To satisfy the second element, "the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process." *Id*. In this context, "'process' is issued by the court, under its official seal, and must be distinguished from pleadings, which are created and filed by the litigants." *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 747 (N.D. Ill. 2012) (citing *Com. Bank, N.A. v. Plotkin*, 627 N.E.2d 746, 749 (Ill. App.

Ct. 1994)); *see also Neurosurgery and Spine Surgery, S.C. v. Goldman*, 790 N.E.2d 925, 930 (Ill. App. Ct. 2003) ("'Process' has been defined as any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property.").

Here, the Plaintiff bases his abuse of process claim on the Defendant's filing of her Amicus Curiae Brief in the Plaintiff's criminal case, alleging the Defendant did so with no legal standing, no legitimate judicial purpose, and to inject unrelated, damaging personal attacks in the federal court. Obviously, the Defendant's Brief filed in the *Henson* criminal case was not a document or statement the Court issued under its official seal. Rather, as the Plaintiff himself alleges, the Court *struck* Defendant Espejo's Brief from the *Henson* criminal case record. *See Henson*, No. 2:20-cr-20049-JEH-EIL (2/3/2025 Text Order directing Clerk to strike the Brief). The Plaintiff has failed to allege the second element of his abuse of process claim, warranting the claim's dismissal. *See Kumar*, 820 N.E.2d at 1173 ("the tort of abuse of process is not favored under Illinois law").

### III

For the reasons set forth *supra*, Defendant Lynn A. Espejo's Rule 12(b)(6) Motion to Dismiss and Motion for Summary Judgment (D. 4), construed solely as a motion to dismiss, is GRANTED IN PART and DENIED IN PART. The Motion is granted as to Counts II-IV of the Plaintiff's Complaint which are dismissed without prejudice for failure to state a claim. The Motion is denied as to Count I (defamation). Plaintiff Jeffery Todd Henson, Sr.'s "Sur-Reply and Motion to Strike Defendant's July 29, 2025 Filing [9]" (D. 10) is DENIED AS MOOT. The Plaintiff is granted leave to amend his Complaint within 14 days of this Order's date if he believes he can state additional claims in accordance with this Order. The Court will set the deadline for the Defendant to answer or otherwise plead by separate text order. Defendant Espejo is granted leave to register for electronic filing by: 1) obtaining a Pacer Account at www.pacer.gov; and then 2) requesting filer

permission by following the instructions found at "Registering for an E-Filing Account" at the bottom of the Court's web page at https://www.ilcd.uscourts.gov/content/attorney-admission-pacer.

*It is so ordered.*

Entered on September 2, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE